IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
04 SEP 20 PM 3: 19
CLERK-ALBUQUERQUE

TRADESMEN INTERNATIONAL, INC.,

    Plaintiff,

v.

DKD ELECTRIC COMPANY, INC.,

    Defendant.

NO. CIV-04-1065 DJS WDS

## COMPLAINT FOR BREACH OF CONTRACT

PLAINTIFF, Tradesman International, Inc. (Plaintiff), by its counsel Lewis and Roca Jontz Dawe LLP, complains of Defendant, DKD Electric Company, Inc. (Defendant), as follows:

1. Plaintiff is a corporation incorporated under the laws of the State of Ohio, having its principal place of business in Macedonia, Ohio and Defendant is a corporation incorporated under the laws of New Mexico, having its principal place of business in Albuquerque, New Mexico. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

2. Plaintiff and Defendant entered into a "First Call Agreement," attached as Exhibit A, executed by Plaintiff on May 20, 2003, and by Defendant on May 21, 2003.

3. The First Call Agreement provides for Defendant to use Plaintiff as its first call as a construction labor support company for skilled trade labor for projects requiring additional trade labor.

4. The First Call Agreement is for a term of the last to occur of twelve (12) months or two million dollars ($2,000,000.00) total billings by Plaintiff to Defendant under the First Call Agreement.

5. In consideration of execution of the First Call Agreement and full performance of it, Plaintiff agreed to forebear and forego seeking payment from Defendant the sum of $72,427.84 for skilled trade labor previously provided by Plaintiff to Defendant under a "Client Services Agreement" and "Addendum" described below.

6. Defendant has by its distinct and unequivocal words and conduct demonstrated that it is unwilling to perform according to the terms of the First Call Agreement.

7. Defendant has by its words and conduct breached the First Call Agreement.

## COUNT I

8. Plaintiff incorporates the foregoing allegations by reference.

9. By reason of Defendant's breach of the First Call Agreement, Plaintiff's agreement to forebear and forego seeking payment from Defendant of the sum of seventy-two thousand four hundred twenty-seven dollars and eighty-four cents ($72,427.84) for skilled trade labor previously provided to Defendant is abrogated.

10. Attached as Exhibit B is a copy of the "Client Services Agreement" between Plaintiff and Defendant and the Addendum to that agreement, both executed by Plaintiff on March 14, 2001 and Defendant on March 20, 2001, wherein the skilled trade labor was provided by Plaintiff to Defendant.

11. There remains due and owing from Defendant to Plaintiff the sum of seventy-two thousand four hundred twenty-seven dollars and eighty-four cents ($72,427.84) for the skilled trade labor provided.

12. The Client Services Agreement provides that Defendant is responsible for additional direct or indirect costs of collection, including Plaintiff's attorneys' fees. In addition, Plaintiff is entitled to pre-judgment interest.

WHEREFORE, Plaintiff prays for judgment against Defendant for $72,427.84 plus its additional direct or indirect costs of collection, including attorneys' fees, pre-judgment interest, its costs of suit, and such other and further relief as may be proper.

## COUNT II

13. Plaintiff incorporates the foregoing allegations by reference.

14. Defendant has anticipatorily breached by its words and conduct the First Call Agreement.

15. Defendant is liable to Plaintiff for Plaintiff's profit on the two million dollars ($2,000,000) in total billings by Plaintiff to Defendant had Defendant honored the First Call Agreement.

WHEREFORE, Plaintiff prays for judgment against Defendant for Plaintiff's profit on the First Call Agreement had Defendant honored the Agreement, its additional or indirect costs of collection, including attorneys' fees, its costs of suit, and such other and further relief as may be proper.

Respectfully submitted by:

LEWIS AND ROCA JONTZ DAWE LLP

Thomas P. Gulley
Attorneys for Plaintiff Tradesmen International, Inc.
P.O. Box 1027
Albuquerque, NM 87103-1027
505-764-5400

13127.00010/TGULLEY/223262.1

## FIRST CALL AGREEMENT

This First Call Agreement is made and entered into by and between TRADESMEN INTERNATIONAL, INC. ("TII"), having its principle office at 6830 Cochran Road, Solon, Ohio 44139 and DKD ELECTRIC COMPANY, INC. ("DKD"), having its principle office at 4500 Bogan, N.E., Albuquerque, NM 87109.

### PREAMBLE

TII and DKD agree to work in partnership for the benefit of both companies as set forth below:

1. <u>First Call Agreement</u>: DKD and its affiliates, as hereinafter described, agree to utilize TII as its first call as a construction labor support company for skilled trade labor for projects requiring additional skilled trade labor. TII agrees to provide, as requested, skilled trade labor on commercially reasonable terms, from time to time.

2. <u>Duration</u>: This Agreement shall be for a term of the last to occur: (i) Twelve (12) months, or (ii) Two Million Dollars ($2,000,000) in total billings by TII to DKD.

3. <u>Consideration</u>: In consideration of the execution of this Agreement and full performance hereunder by each of the parties hereto, TII agrees to forebear and forego seeking payment from DKD in the amount of $72,427.94 for skilled trade labor previously provided to DKD.

4. <u>Client Services Agreement</u>: Each of the Affiliates of DKD not presently signatory to TII's Client Services Agreement shall execute an Agreement that shall contain the same terms and conditions as the Client Services Agreement executed by DKD.

5. <u>Governing Law</u>: This Agreement shall be governed by the laws of the State of New Mexico. Any action brought by either party hereto against the other shall be brought in a court of competent jurisdiction in the State of New Mexico.

DKD ELECTRIC COMPANY, INC.

By: _____
Joe Dee Dennis, Jr.

Title: ____President____

Date: May 21, 2003, 2003

TRADESMEN INTERNATIONAL, INC.

By: _____

Title: Vice President / General Counsel

Date: May 20, 2003, 2003

EXHIBIT A

**EXHIBIT B**


Tradesmen International, Inc.
8830 Cochran Road
Solon, Ohio 44139
440-349-3432

| CLIENT | |
|---|---|
| Name: | DKD Electric Company, Inc. |
| Address: | P.O. Box 26536 |
| | Albuquerque, New Mexico 87126 |
| Telephone: | 505-881-6100 |

## CLIENT SERVICES AGREEMENT

1. **DURATION OF CONTRACT:** This contract shall commence on the date it is fully executed and continue for a period of not less than one year. Either party may terminate this contract by giving the other thirty (30) days written notice. After notice, the termination shall occur at the end of the next calendar month during which time the parties will continue to meet their respective obligations described in this agreement.

INTL. RS

2. **TERMS OF CONTRACT:** Tradesmen International agrees to assign employees to the Client on a permanent basis and assume exclusive responsibility for the payment of wages to its employees so assigned. Tradesmen International shall, with respect to its employees, be responsible for withholding federal and state income taxes, paying federal social security taxes, unemployment insurance and maintaining Workers' Compensation insurance coverage in an amount and under such terms as required by the State of New Mexico.

a. Tradesmen International will guarantee that the worker sent to the Client's job site will be of the quality and have the knowledge the Client requested. If, in the Client's opinion, this is not the case, then the Client has the option of sending the worker back to Tradesmen International within the first four (4) hours of the first day at no charge to the Client. Client is solely responsible for directing, supervising and controlling Tradesmen employees as well as their work.

b. Client, at its sole discretion, may terminate an employee assigned under this contract at any time for any lawful reason.

c. Client will not recruit and/or employ Tradesmen International's workers for separate employment by the Client during the term of this contract.

INTL. RS

3. **TERMS OF PAYMENT:** The Client agrees to pay Tradesmen International the bill-out rates per hour, for the workers provided by Tradesmen International multiplied by the number of hours worked by such workers, except as otherwise provided in this contract. Client is solely responsible for verifying the accuracy of the records of actual time worked by Tradesmen employees.

a. If Client requires Tradesmen International's workers to transfer job sites during the workday, Client agrees to pay Tradesmen International for each transfer an amount equal to the number of miles traveled by each worker providing his own transportation times $.30 per mile, and the employee's hourly bill-out rate for time spent driving. 100% of mileage will be paid to the Tradesmen employee.

b. The Client agrees that payment will be made upon receipt of invoice. The parties agree that any amounts due Tradesmen International over thirty (30) days will accrue interest at the rate of two percent (2%) per month. Client will immediately notify Tradesmen International of disputed invoice amounts.

c. In the event that Client fails to make payment within the time specified in Paragraph 3(b) above, Tradesmen International and Client agree that Tradesmen International shall have the right to immediately discontinue providing Client with workers and to prohibit Tradesmen International's tradesmen from working for Client. Client agrees to be responsible for any other additional direct or indirect cost of collection including attorneys fees.

INTL. RS

4. **INSURANCE AND HOLD HARMLESS CLAUSE:** The Client agrees to provide general liability insurance coverage for Tradesmen International and its workers provided under this contract with a liability limit of not less than $1,000,000.00 per occurrence. In addition, Client shall provide to Tradesmen International a Certificate of Insurance naming Tradesmen International as a certificate holder.

a. Client agrees that Tradesmen International is neither a guarantor, nor insurer and will not be liable for any injury, loss or damage to persons or property or from work stoppages that may arise in the performance or non-performance of work by Tradesmen employees, or the conduct of any other person at the job site. Client agrees to release, defend, indemnify and hold Tradesmen International harmless from and against any and all claims, losses, liabilities and costs (including reasonable attorneys fees) relating to any injury, loss or damage to persons, or to property arising out of any and all wrongful or negligent acts committed by Client or Tradesmen employees under Client's supervision, direction and/or control (excluding workers' compensation claims of Tradesmen employees). This indemnity extends to violations of federal, state or local laws, statutes or regulations by Client or Tradesmen employees under Client's supervision, direction and/or control, to the extent permitted by law.

INTL. RS

5. **LIMITATION OF SERVICES:** The parties to this contract understand and agree that no worker provided by Tradesmen International to Client shall be allowed and/or requested to operate any vehicle for the Client and that the Client, under no circumstances, will direct or permit the tradesman to operate any such vehicle for the Client away from the job site or to operate any vehicle for the Client for any purpose whatsoever.

INTL. RS

IT IS EXPRESSLY AGREED AND UNDERSTOOD THAT CLIENT'S SIGNATURE HERE-ON IN NO WAY OBLIGATES CLIENT UNTIL SUCH TIME AS CLIENT ACTUALLY USES TRADESMEN INTERNATIONAL'S EMPLOYEES.

The parties agree and understand that only Tradesmen International, Inc.'s General Manager is authorized to enter into this contract on behalf of Tradesmen International and that any representations made by a sales agent or any other agent of Tradesmen International as to Tradesmen International's obligations under this contract are made without authorization of Tradesmen International. Client represents to Tradesmen International that the representative signing below is duly authorized to execute this contract.

By signing below, the Client acknowledges that he has read and understands the terms and conditions contained herein and agrees to such terms. This contract shall take effect and constitute a binding contract between the parties only when signed by an authorized representative of Tradesmen International.

| CLIENT'S ACCEPTANCE: | ACCEPTANCE BY TRADESMEN INTERNATIONAL, INC. |
|---|---|
| By: _Kelli Spinosa_ | By: _[signature]_ |
| Title: _Human Resources_ Date: 3/20/01 | Title: Mike Morris, Division Manager Date: 3/_/_ |

## ADDENDUM

Tradesmen International, Inc.
Client Services Agreement: Executed March __14__, 2001
Client: DKD Electric Company, Inc.

Tradesmen International, Inc. ("Tradesmen") and DKD Electric Company, Inc. ("Client") agree to add to the terms and conditions of the Client Services Agreement to which this Agreement is attached the following additional understandings:

1. Client has requested that Tradesmen provide journeymen electricians to the job site. Certain of these journeymen electricians may be (i) unlicensed journeymen electricians, (ii) or hold journeymen licenses from a state other than New Mexico, or (iii) hold New Mexico journeymen licenses. Each of the category of electricians described in this paragraph shall be paid a per hour rate and billed out to Client as is hereinafter provided:

    a. Unlicensed journeymen electricians (with no state license) will be paid at the rate of $22 per hour, and the bill out rate to Client for regular time hours shall be $31.25 with overtime at 1.4 times the bill out rate.

    b. Licensed journeymen electricians that hold a license from a state other than New Mexico will be paid at the rate of $23 per hour, and the bill out rate to Client for regular time hours shall be $32.25 with overtime at 1.4 times the bill out rate.

    c. Licensed New Mexico journeymen electricians will be paid at the rate of $24 per hour, and the bill out to Client for regular time hours shall be $33.25 with overtime at 1.4 times the bill out rate.

2. Tradesmen agrees that all non-New Mexico licensed journeymen electricians must apply for a temporary New Mexico journeymen's electrical license within seven (7) days from their start date at the project. Thereafter, each such non-New Mexico licensed journeymen electrician must have scheduled and taken his examination, required to be taken to obtain a New Mexico journeymen's electrical license, within thirty (30) days from the start date of assignment. In the event any electrician fails the examination, it shall be at Client's discretion to retain or return the electrician to Tradesmen.

3. Tradesmen agrees that all electricians assigned by it to Client shall be subject to random drug tests given by Client throughout their assignment to the project as

1

well as a post-accident drug test in the event of an accident. In addition, all Tradesmen electricians will be required to take a DKD drug test immediately upon arrival at the work site and a second drug test to be administered shortly thereafter by Intel Corporation.

4. Tradesmen agrees that all electricians assigned to the project shall be the subject of a criminal background check to be conducted by Intel Corporation.

5. Tradesmen assigned electricians who work at the site project for three (3) full weeks without any missed work, accidents, tardies, or violations of DKD policies, will receive a $150 bonus in their next regularly scheduled pay following each three (3) week period. The three (3) week period described herein shall continue the duration of the project.

6. Tradesmen electricians assigned to the project that have worked at the project site for six (6) consecutive months and remain working at the site through and including the last layoff at the job site shall receive a $1,000 bonus.

All of the terms and conditions of the Client Services Agreement, unless modified by this Addendum, shall remain in full force and effect.

DKD ELECTRIC COMPANY, INC.

_[signature]_
Signature

Renée Spencer
Print Name

Human Resources
Title

3-20-01
Date

TRADESMEN INTERNATIONAL, INC.

_[signature]_
Signature

Mike Morris
Print Name

Major Accounts Division Manager
Title

3/14/01
Date

2